Paul D. CONRAD, Appellant,

v.

William F. BUNDY and Nellie M. Bundy, David Reynolds, Reading Fisher & Company, Fairview Coal Company, William A. Main and June A. Main, Husband and Wife, C. Blanchard, J.S. Reitz and A.H. Reitz, Hoover Hughes & Company, George A. Hoover, Elizabeth A. Hoover, William V. Hughes, Rebecca E. Hughes, William P. Hanes, Ann Elmira Hanes and Their Heirs, Devisees, Administrators, Executors and Assigns and all Other Person, Persons, Firms, Partnerships or Corporate Entities in Interest, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 13, 2001.

Filed May 4, 2001.

David Hopkins, DuBois, for appellant.

Matthew B. Taladay, DuBois, for appellees.

Before JOHNSON, HUDOCK and HESTER, JJ.

HESTER, Judge:

¶ 1 Paul Conrad appeals from the August 16, 2000 judgment dismissing his complaint in quiet title and ejectment to 3.9 acres of real property ("Warrants 2013 and 2014") that has been subject to two tax sales in its history. We affirm.

¶ 2 The record reveals the following facts of this complex case. The original owner of the underlying property was David Reynolds but the record is silent as to when the property was acquired. Mr. Reynolds's estate subsequently conveyed the property to John Dubois and Elia Lowe in 1856. Mr. Lowe conveyed his interest in the property to Mr. Dubois in 1865. Mr. Dubois later conveyed the property to Reading Fisher & Company ("Reading"). The year of that conveyance is unknown, but a deed recorded in Clearfield County indicates that Reading conveyed the property to Hoover Hughes & Company ("Hoover") in 1881. Hoover's last known owners and heirs are George A. Hoover, Elizabeth A. Hoover, William V. Hughes, Rebecca E. Hughes, William P. Hanes, and Ann Elmira Hanes. Hoover is the last record owner of the subject property.

¶ 3 In 1931, J.S. Reitz and A.H. Reitz purchased the property at the Clearfield County Commissioner Sale. An assessment card on record at the Clearfield County Courthouse indicates that prior to the sale, the property mistakenly had been assessed in the name of C. Blanchard Estate. Further, the assessment states that the realty was comprised of fifteen acres instead of the actual 3.9 acres. There is no record of the property being sold to any party after the Reitzes purchased it in 1931.

¶ 4 In 1993, the Clearfield County Tax Claim Bureau listed the property for sale with ownership as unknown. On December 10, 1993, Patrick H. Mowrey et al. purchased the property as an "unknown"

tax sale. Mr. Mowrey *et al.* then sold the realty for $11,000.00 to Appellant on November 10, 1997. Upon receipt of final payment, Mr. Mowrey *et al.* will furnish a quitclaim deed to Appellant.

¶ 5 On January 4, 1999, Appellant commenced a quiet title action for the underlying property against current and previous occupiers and owners including William and Nellie Bundy, C. Blanchard, and J.S. and A.H. Reitz and their heirs. He served all defendants by publication. The Bundys, Appellees herein, are the only defendants who filed an answer, which contained preliminary objections; the Bundys own and occupy property that encroaches upon a portion of the subject property. Appellant subsequently filed an amended complaint naming Hoover and its heirs as additional defendants and restating the action as one of quiet title and ejectment.

¶ 6 After further amendments to the pleadings by Appellant and Appellees, the latter filed a motion for judgment on the pleadings on December 3, 1999, which the trial court denied on February 14, 2000. Appellees filed a motion for reconsideration on March 7, 2000, and on May 18, 2000, after entertaining oral argument, the trial court agreed to reconsider its February 14, 2000 denial of Appellees' motion.

¶ 7 The court instructed Appellant that he could not proceed on his action to eject Appellees until his quiet title action against Hoover and its heirs was resolved. In order to accomplish this, the court found that Appellant needed to establish a clear chain of title dating back to Hoover, the last known record owner of the property. The court told Appellant that he would need to supply proof to the court which would overcome the defects of the 1931 tax sale whereby the Clearfield County Treasurer sold the property to the County Commissioners as belonging to

H.C. and A.H. Burkett instead of Hoover, the true record owner.

¶ 8 The trial court further found that even if a default judgment were entered against Hoover, that alone would not cure the defects in the 1931 tax sale. The court informed Appellant that it would give him a reasonable amount of time to obtain and supply the necessary proof needed to overcome these defects.

¶ 9 On August 11, 2000, Appellees renewed their motion for judgment on the pleadings. Approximately three months had passed and Appellant had not furnished any documentary evidence. A copy of this motion was mailed to Appellant's counsel that day. The trial court granted the motion on August 15, 2000. This timely appeal followed.

¶ 10 Appellant contends the trial court erred in granting Appellees' judgment on the pleadings without providing him an opportunity to be heard. Our standard and scope of review in matters involving the grant or denial of judgment on the pleadings is as follows:

> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted. Further, the court may grant judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise.

*Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Co.*, 761 A.2d 553, 554 (Pa.Super.2000).

¶ 11 After considering the arguments of the parties, their briefs, and the record, we do not find the trial court abused its discretion or committed any error. On December 3, 1999, Appellees filed their first motion for judgment on the pleadings, which the trial court denied on February 14, 2000. Appellees then filed a motion for reconsideration. The court took the motion under advisement and on May 18, 2000, conducted a hearing and heard arguments from Appellant and Appellees as to why the motion should not be reconsidered.

¶ 12 At the conclusion of the hearing, the court stated that it was deferring its ruling since Appellant had yet to prove that the defects of the 1931 tax sale of the property could be cured, and Appellant had yet to establish a chain of title of the property back to Hoover, the last record owner. Clearly, the trial court could have granted Appellees' motion on May 18, 2000, but instead gave Appellant an opportunity to obtain proof that the defects of the sale were curable. Three months passed, and Appellant did not supply the court or Appellees with any such proof. Based on the pleadings before it, the trial court had no choice but to grant the motion since Appellant could not overcome the defects.

¶ 13 Appellant complains that he was not afforded an opportunity to be heard on Appellees' renewed motion for judgment on the pleadings. However, the decision on whether to grant such a motion lies within the sound province of the trial court which is most familiar with the parties and the facts of the case. In his brief, Appellant does not indicate what, if any, new evidence he would have provided to the court that he did not already have on

May 18, 2000. Further, we note Appellant did not petition the trial court for reconsideration in order to explain why he had not responded to the court's earlier directive to furnish proof that the 1931 tax sale was curable. Appellant had three months to apprise Appellees and the court of the status of its efforts. Thus, we do not find the court abused its discretion in dismissing Appellant's action without another hearing. This issue is meritless.

¶ 14 Appellant also argues that the trial court erred in ruling he did not obtain color of title of the property from the 1993 Clearfield County tax sale from an unknown owner. Appellant acknowledges the lineage of owners of the property from the original owner, David Reynolds, up to Hoover. However, he contends that once the 1931 tax sale occurred wherein the property was bought by J.S. Reitz and A.H. Reitz, there were no other record owners of the property until 1993 when the Clearfield County Tax Claim Bureau sold the property as owner unknown. This contention is erroneous since the procedural defects of the 1931 sale could not be cured by a subsequent tax sale as owner unknown.

¶ 15 The trial court found that both the 1931 and 1993 tax sales were invalid. In 1931, the true owner of the property, Hoover, was not given notice that the property was going to be sold. Thus, while the property was unfortunately assessed as comprising of fifteen acres and having belonged to the Estate of C. Blanchard, in actuality the property consisted of 3.9 acres and belonged to Hoover. Likewise, the tax sale in 1993 was invalid since the record owner of the realty, still Hoover and its heirs, were not given notice of the sale.

¶ 16 Appellant asserts that even if the 1931 tax sale was invalid, the 1993

sale was valid. He cites *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137 (Pa.Cmwlth.1997), in support of his assertion. Respectfully, we disagree. We note that we are not bound by the decisions of a sister court. *See Commonwealth v. Wilson,* 744 A.2d 290, 291 (Pa.Super.1999) (Superior Court is not bound by holdings of the Commonwealth Court, but is bound by holdings of the Supreme Court). Nevertheless, although we do not find holding of the Commonwealth Court in *Farro* to be dispositive, we do find it instructive.

¶ 17 In *Farro,* the Farroes purchased the subject property in 1987 and recorded the deed with the Monroe County Recorder of Deeds. As a result of delinquent taxes for the 1989 tax year, the property was sold, without proper notice to the Farroes, to Raymond Lavigne at a tax sale in 1991. Mr. Lavigne was given a deed to the property by the tax claim bureau, and he properly recorded it. The Farroes filed a petition to set aside the sale complaining that they were not given proper notice under 72 P.S. § 5860.101 *et seq.,* the real estate tax sale act.

¶ 18 The trial court set aside the sale and ordered the Farroes to forward the amount of the purchase price of the property and the costs of the tax sale to the tax claim bureau. The court further ordered Mr. Lavigne to execute a quitclaim deed in favor of the Farroes. Mr. Lavigne did so in 1992 and authorized the Farroes to record it. The Farroes did not record the deed until 1995. Meanwhile, taxes became delinquent on the property from 1991 through 1993. All delinquency notices and tax sale notices were mailed to Mr. Lavigne since he was the property owner of record.

¶ 19 In 1994, the tax claim bureau sold the property to S2M Associates at a tax sale. The Farroes again sought to have the sale set aside since they did not receive notice of the tax sale. This time, the trial court found that they were not entitled to notice of the second tax sale since they failed to record the quitclaim deed prior to the second tax sale. The recording would have established their ownership of record in accordance with the statute.

¶ 20 Our Commonwealth Court agreed, resolving this issue by determining who was the "owner" of the subject property according to that definition in the statute. Section 5860.102 defines "owner" as follows:

"Owner," the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording ...

72 P.S. 5860.102. After careful review, the Court found that the second clause of this definition was applicable since Monroe County, a fifth class county, was under no duty to maintain a registry. Thus, since the Farroes did not record the deed to the property until well after the second tax sale, they were not entitled to notice since they were not the record owners of the property.

¶ 21 In analyzing Appellant's argument herein, we look to 72 P.S. § 5860.602, the notice of sale requirement (emphases added):

§ 5860.602. Notice of sale.

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers ... Such notice shall set forth ... (5) *the descriptions of the properties to be sold* as stated in the claims entered and *the name of the owner.*

(b) Where the owner is unknown and has been unknown for a period of not less than five years, the name of the owner need not be included in such description.

. . . .

(d) Such published notice shall be addressed to the "owners of properties described in this notice and to all persons having liens, judgments or municipal or other claims against such properties."

. . . .

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, *to each owner* as defined by this act.

(2) If return receipt is not received from each owner.... It shall be the duty of the bureau to determine the last post office address known to said [tax] collector and county assessment office.

(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

(f) *The published notice, the mail notice and the posted notice shall each state* . . .

¶ 22 Appellant argues he has established a clear chain of title by virtue of the 1993 sale. He relies on the proposition that since that sale was determined to be an unknown owner tax sale, Mr. Mowrey *et al.* obtained title to the property that day when he paid for it, and therefore, a chain of title to the Hoover property had been established. However, in his new matter and answer to Appellees' new matter, Appellant does not dispute that the record owner of the property in 1931 was Hoover and not J.S. and A.H. Reitz. Thus, we are presented with an issue of first impression as to whether the 1993 tax sale vitiated the defects of the 1931 tax sale. We find that it did not.

¶ 23 Clearly, under the words of the statute, Hoover and its heirs were entitled to notice by the Clearfield County Tax Claim Bureau that its property would be sold, both in 1931 and in 1993. Further, that notice had to contain a description that would adequately identify the property. We previously have stated that a tax sale of land is not valid unless both the assessment and the conveyance by the treasurer sufficiently identify the parcel sold. *Carratelli v. Castrodale*, 185 Pa.Super. 426, 137 A.2d 805, 807 (1958). Due to a clerical error, the property was misidentified and incorrectly assessed in 1931 as belonging to the estate of C. Blanchard and comprising fifteen acres. This, however, does not change the fact that Hoover was the record owner of the property. A reasonable check into the county records would have revealed this fact and that the parcel comprised 3.9 acres. There is nothing in the record to indicate that Hoover or its heirs received notices of either tax sale.

¶ 24 Our Supreme Court has made clear that in tax sales involving joint owners of property, *each* owner must be given notice of the pending sale. *Krumbine v. Lebanon County Tax Claim Bureau*, 541 Pa. 384, 663 A.2d 158 (1995). In *Krumbine*, three persons were listed on a deed as trustees of the real estate for an unincorporated association. However, only one of the trustees' addresses was listed on the county tax assessment office records, and consequently, all tax bills were mailed exclusively to that address. When the property taxes became delinquent in 1991, the tax bureau sent a notice of a tax sale only to that address. Our Supreme Court held that each of the trustees was entitled to notice since they all were record owners of the property. Further, Pennsylvania appellate courts have held that a county tax bureau must use ordinary common sense

business practices in ascertaining owners and proper addresses to which notices required by the real estate tax sale law are to be sent. *See Kleinberger v. Tax Claim Bureau of Lehigh County*, 64 Pa.Cmwlth. 30, 438 A.2d 1045 (1982).

 ¶ 25 We find the facts of the instant case to be distinguishable from *Farro*. In *Farro*, the Farroes were the record owners of the property when the first tax sale occurred. However, since they were not given proper notice, the sale was set aside. Likewise, in the case herein, Hoover is the record owner of the subject property, and it was not given notice of either the 1931 or 1993 tax sales. Also in *Farro*, once the property was returned to the Farroes following the first tax sale but before the second tax sale, the deed was not recorded. Thus, the record owner remained Mr. Lavigne. The Farroes could not claim that they did not receive notice since the power was theirs to ensure that they would receive notice if they had recorded the deed. In the underlying case, Hoover remained at all times the record owner of the property. Reasonable diligence on the part of the tax bureau would have discovered this fact. Hoover simply was never given notice that any sale would occur, and we cannot turn a blind eye to this fact. As ·the Commonwealth Court stated in *Farro*, if *any* of the three types of notice are defective, be it by publication, posting, or certified mail, *the tax sale is void. Farro, supra*, 704 A.2d at 1140 (emphases added) (relying on *Krumbine, supra* ); *see also Geier v. Tax Claim Bureau of Schuylkill County*, 527 Pa. 41, 588 A.2d 480 (1991).

¶ 26 Appellant makes the dubious suggestion that it is entirely possible that in 1993 the tax claim bureau could not follow the chain of title back to 1881 when the property was conveyed to Hoover. He does not support this theory with any facts or evidence. Therefore, we are unpersuaded by his suggestion. Absent a clear chain of title from Hoover or proof that the defects of the 1931 tax sale are curable, Appellant cannot obtain quiet title to the property. For the reasons stated above, we affirm the judgment of the trial court.

¶ 27 Judgment affirmed.